The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any matter or form of business before the Honorable of the United States Court of Appeals for the 4th Circuit are advised to draw a nod and give their attention for the Court is now sitting. God save the United States and this Honorable Court. Please be seated. Good morning, and Judge Thacker, Judge Diaz, and I are pleased to welcome you to the 4th Circuit. We'll proceed to our first case, which is number 12-6274, United States v. Sanderson. Mr. Steph, whenever you're ready. Good morning. May it please the Court. My name is Ben Steph. I'm a federal public defender from Greenville, South Carolina, and I represent Michael Scott Scottie Sanderson. I began representing Mr. Sanderson at his initial appearance in the district court in Greenville in February of 2011 when he was brought in on the complaint that ultimately turned into the indictment for violation of Title 18, Section 2250A. I've represented him throughout this process at the competency hearings and at the cell hearing, which we had. Just on a little bit of background on Mr. Sanderson, I believe the record will reflect that he's a convicted sex offender here in Virginia as a result of a conviction from an incident that occurred in May of 1997. He was convicted at a bench trial in 1998, January, and was sentenced in July of 1998. Since that time, he has remained on probation. He's been back in front of the court in Newport News on a couple of occasions relating to, I believe, two instances of failure to register as a sex offender in Virginia and related probation violations. He was last in court in Newport News in September of 2010 when his probation was continued, and then shortly after that, well, about a month and a half after that, in November of 2010, he was unaccounted for, and the probation office in Virginia issued a warrant to pick him up on a robot. The Virginia detainer is still active? I don't think so. We had some back and forth about the paperwork and whether Virginia wanted him back at that time, and my last information from the people in Newport News was that they were going to defer prosecution on both a probation violation and a failure to register to the federal court in South Carolina. So as far as I know, he still remains under state probation in Newport News, and that's part of our position is that he is on indefinite probation there and will, as far as we know, will still be under their supervision, whatever happens in this case. But nevertheless, he disappeared, and sometime after the court hearing, they issued a warrant for him in November. They tracked him down in Greenville, South Carolina, and warrants were sent down, and on November the 9th of 2011, he was arrested by the Greenville County Sheriff's Office, put in jail, and about a month later in February, the federal complaint was issued, and so we go from there. Our position in this situation case is that the cell factors—when we had the hearing, we went through the four cell factors, and we don't contest the issues regarding medical necessity and are they medically appropriate and those things. The second, third, and fourth factors are not an issue here today. Our contention is that while the government may have an important governmental interest in prosecuting Mr. Sanderson for this failure to register charge, that the special circumstances that the courts say can lessen the government's interest apply in this case and override the important governmental interest of prosecution. Just to clarify, do you concede that the government has an important interest here? Well, they have an important interest because it's a serious offense, and the courts have already ruled that anything that carries 10 years is by definition a serious offense, so the law is well settled in that. So you concede that, and your only argument is with whether or not there are special circumstances? Yes. Okay. And we contend that the special circumstances— it appears to be a continuing offense in the sense that, as best we can tell, your client still hasn't registered or complied with the law. Well, he can't comply now. The minute he got locked up, he was unable to comply. What are our assurances that if we agree with your position that he's going to at some point be able or be willing to comply with the law? That's part of my concern is that the law is going to continue to be flouted if, in fact, we agree with you that this is not the time to prosecute this defendant. Well, I agree it is a continuing crime, much as a felon in possession of a firearm is a continuing offense. But he's on supervision—he's under court supervision in Virginia here, and if he were to get out, he is immediately on their supervision again for an indefinite period of time. And so he has that hanging over him, which is the potential of a probation violation. And he also, you know, wherever he—if he gets out, wherever he gets released from, he is required to register, whether it's here in Virginia or in North Carolina where he's been held at the Federal Medical Center at Butner or wherever. He has to register. But he hasn't registered before and hasn't been amenable to any sort of monitoring before. What indication is there in his background that he would comply now? Well, he has registered before. He was registered when he left Virginia. If he hadn't left Virginia and gone to South Carolina, as far as I know, he would have been in compliance. The crime is him coming to South Carolina and not registering. And, you know, he would have to—he's always going to have to register. And as far as we know, until the state of Virginia turns him loose from probation, he's always going to be under their probation. But he's like so many other sex offenders that they're supposed to register and they end up in court because they haven't registered. But he's also on probation, which I think is an additional thing because most sex offenders could freely go from one place to another as long as they're registered within the prescribed time limits that they have to. But for him to leave Virginia, he's supposed to get permission before he leaves. In this case, they say he didn't. He just disappeared. Doesn't he have three prior failing to register convictions? One in 2003, one in 2007, and then this most recent arrest in 2011? He's been convicted twice, and then there's this. That's correct. I mean, I don't know about the dates, but those—because the dates I have sometimes, they give you the date of arrest versus the date of conviction. But, yes, he's been convicted twice in Virginia, and the probation office has dealt with that as well as the court in Newport News. Our position is that, like in the White case, that the special circumstances would mitigate in this man and not facing the exceptional and extraordinary situation of having to be forcibly medicated in order to render him competent because he's not a danger to himself, he's not a danger to other people, so the competency issue is the only one that's before the court. I don't know that I agree with that he's not a danger to other people. By definition, the fact that he's been identified as someone who is required to register at least implies that there is some potential for danger to the larger community. So this is different, I think, than White in that we have some manifestation of a probability of being a danger to others. However, I recognize that he's not the worst case offender, but there's still some recognition of that, and that's in part why he's required to register. That's true, and we're dealing in future situations, probabilities. He was convicted in 1998, the act occurred in 1997. During all the time he's been out of prison, he's not committed any other offenses. He's not been convicted of any other offenses. You said he has not committed any other offenses. I guess I'm confused. We deal usually in things that people are convicted of. He may have committed this offensive failure to register, but I'm not aware of any other things that he's committed that he hasn't been convicted of. Right, and that's my point. You're not aware of any other things that he has committed. That's true, but the court operates in what people have been convicted of, I think, rather than what they may have committed, they just hadn't been caught doing. That's true. Based on what the doctor said and what the criminal history shows, he has not been convicted of anything other than the registration violations since he went to court in 1998. Again, I understand that it's a serious matter and that the government has an interest in knowing where these people are, but the court in white has said there's a lot of serious cases and there's a lot of reasons why the government may have to prosecute these people, but the prospect of forcibly medicating somebody is an extraordinary measure that should only be applied rarely rather than routinely. It's our contention, again, based on the facts of the case, that in Sanderson's situation, it's a nonviolent offense. I would also point out that it is a routine failure to register case. The statute provides for people who commit further crimes of violence while they are in the failure to register situation, and the penalties are vastly increased, a minimum of five years to 30 years by statute. In Sanderson, Mr. Sanderson's only charge under the generic or general failure to register is zero to ten years. He's been locked up since 2011, so he's got 24 months in, so to speak, that he would get credit for. As noted in the briefs, the purported guidelines would put him at about 41 to 51 months on a base offense level of 16. That comes from the guidelines and our general belief that he would be a Category 5 criminal history score, because that would come at least from three points for the Virginia conviction, which still would count against him, two more points for being on probation, and some more points for these failure to register. Does the fact that he can't be civilly committed cut in favor of the government in this case, however slightly? Well, in some ways it does, in some ways it doesn't, because if he could be civilly committed, then I'd be saying, well, they can keep him longer because they committed him. But the only way they can commit him is if they think he's a danger to himself or others, which obviously would go against our situation. So I guess in some way it probably cuts toward the government because they can say, well, they just have to turn him loose. And my contention is, well, if they just have to turn him loose, it's not like they're just going to put him out on the street and say, okay, you've got to register. If you don't, we're going to be looking for you, because he's on state probation. He's going to be required to come back to Virginia to get back into the system in Newport News and remain in that situation with the court down there. I realize you haven't briefed this, and I appreciate the best answer you can give, but what is the state, to the extent of your knowledge, of the Supreme Court's jurisprudence on how long government can hold somebody awaiting their competency? In other words, if we were to reverse here, to the extent you can answer my question, what's the outside limit before some due process kind of claim ripens so that he has to be released? In other words, I assume that the government theoretically could say, all right, we're just going to hold you pretrial detention until you regain your competency. I mean, as a facial matter, the government can do that, right? I don't know that. I mean, maybe they can. I mean, I guess the district court would have to decide whether he could be released on a bond. Well, but the district court's already decided he can't be released on a bond. He has been detained. He is an indicted federal pretrial detainee, right? That's his status. That's right. And that's his status. Nothing we do here, in this case, will change that status. If we affirm and further, maybe I'm not being clear. I can tell from your face I'm not being clear, and I'm not doing a good job of asking the question. Well, I think I understand. He is a pretrial detainee. Correct. And like every other pretrial detainee, he would have a trial date under the Speedy Trial Act, et cetera, et cetera, except in this case he's incompetent to stay in trial. And so it's a matter of due process. He can't assist in his own defense, and therefore he can't be brought to trial. So the law says, all right, what do we do in this situation? One answer is you forcibly medicate a pretrial detainee who is incompetent, who won't voluntarily accept the medications. Right? And the Supreme Court itself in those prior cases said, well, here are the interests that are involved, et cetera, et cetera. But there's no question a pretrial detainee has a liberty interest in not being forcibly medicated. Okay? So that's where we are. So my question to you, not asked very well, is apart from forced medication, what is the due process boundary, if there is one, and I have to assume there is one, at least for a citizen, what is the due process boundary at which government can no longer just hold a person as a pretrial detainee, waiting for him or her to regain competency? My first statement is I don't know, but I would suggest that one place to begin would be the statutory maximum on the sentence. In the case of this man, I would think that would be at least. That's a good answer. That would be one place you could go to. So the outside limit would be 10 years here? I would think that. Okay. On the other side, the cases that I've read seem to suggest in situations like this that if, for example, if this court were to reverse and send it back and say, no, the special circumstances do not warrant forcible medication, it seems to indicate, from what I've seen, that the government takes the position, well, we just have to dismiss the charge. But that's the government's choice. That's the government's choice. Right? Well, it is, but I haven't seen anything that suggests that in one of these cases where they have been sent back and said, you can't do this, that they have just, the government said, well, we'll just wait. We'll just continue to hang on to him. For example, I don't know what happened to the. Well, I checked and wait, and what happened was the indictment was dismissed without prejudice. Which means she would be. Means she's subject to further prosecution. Correct. Right. That's a lot different than sitting and continuing to sit in a detention facility. Okay, but you don't know of any reason a person couldn't continue to sit in a detention facility. I don't know of any legal reason I could think of. That's what I mean, yeah. I would go back to the district court and ask the court to force the government's hand, and then I guess we'd be back up here on some kind of situation like that. Right, which is what I was asking you. How soon would you be back? As quick as we could get the papers filed, I suppose. Okay. I appreciate that. I really do. But, again, it's our position that with the way the white case talks about there's violent and there's nonviolent, and there's different types of cases. First of all, Mr. Sanderson is a nonviolent offense. It is a continuing offense. In one sense, that makes it like, well, the minute he gets out, he could be picked up again. If he doesn't do it, it's not like the government's interest in prosecuting a non-registering sex offender will just disappear because he's under an obligation forever to do this. But then what would be your argument if we're back here on this very same issue? He's picked up again. We've got the very same set of facts. Then what? If he's still, if the insanity issue, I mean if the competency issue is still there? Right. I guess it would be the same thing. Who knows? He may get out and do something else. I think the government can be very creative in looking for things that he might have done while he was out, other than just not registering because they would be. You mean those things that he may have committed but not have been convicted of? Those things that they can find, that they can charge him with. Charging him with things and convicting people of things are way different things that we deal with all the time. But Sanderson being someone who's always going to have to register, I don't know that his situation may change, that he may get out of jail. Well, that's what it looks like, isn't it? The truth of the matter is apparently there's going to be a cohort of citizens who are just going to spend their time in jail. Back where I come from, you probably heard this, doing life on the installment plan. A little bit at a time. Is that what we're going to face in this case? I'm afraid it may be because people like Sanderson who have mental problems are going to be . . . if there's any number of things that they're going to run afoul of and he goes back to Virginia, they'll have to deal with him in state court. You've reserved some time, Mr. Stepp. Thank you very much. I'm sorry, Judge, did you have another question? Thank you. May it please the Court. Mr. Johnson? Yes, sir. This is not a routine case and Michael Sanderson is not a routine defendant. Michael Sanderson is a convicted child molester who's now before the court on his third prosecution for failing to register as a sex offender. He absconded from his probation in Virginia and ended up in our state, South Carolina, living in a motel room where the walls were up. There were plastered with pornographic pictures and he had a shrine built to Taylor Swift, who he believes is his common-law wife. And now he's been evaluated and he still has a sexual proclivity for underage children amidst being attracted to teenage girls and being with women who have children. He doesn't believe that he's done anything wrong. He doesn't believe that he has any obligation to register as a sex offender. He believes that if he can just get the paperwork in order— When you say he believes that he has no obligation, etc., does he believe he's on probation? I don't know. He believes that— Well, wait a minute. You know he believes he has no obligation to register. How can you not know whether he believes he's on probation? Because, Judge Davis, in the evaluation reports, he stated that—he stated to the evaluator—I don't know what he stated in regard to probation, but he stated that there was a problem if he could get his representation in order, represent himself, or find another attorney, then he would be able to be released and moved to the British Virgin Islands or the Dominican Republic where he would not have to register as a sex offender. So I know specifically he's made statements about whether he's required to register. I don't know if he's made— So he does believe he has to register unless he moves to the British Virgin Islands. Well, he hasn't been registering. That's clear. He registered at least once, but he's on his third time for not registering as a sex offender. He registered in Virginia attendant to his conviction, right? He registered in— Oh, I'm sorry. Did he ever register after that anywhere, anytime? I would have to double-check the record. I know that he registered in 2010, as Mr. Stepp said, in the fall of 2010, and then immediately left the state and moved to South Carolina and didn't register. That was in connection with a probation violation proceeding, was it not? Somebody took him by the hand and got him registered? I don't know that. Okay, fair enough. I don't know that. I know he registered, as Mr. Stepp said, but then he immediately left the state and moved to South Carolina, and, of course, did not register. And what makes this—this court was concerned in White that if we allowed involuntary medication in that case, we risk it becoming routine. And I think we can all agree that we should not routinely medicate people against their will, even in an effort to restore competency to stand trial. In this case, there are several things that distinguish Mr. Sanderson from the defendant in White. The primary one, I believe, is something that is reflected in Judge Diaz's question about that this is an ongoing offense. Failure to register as a sex offender is an ongoing offense. And if he is not allowed, or we are not allowed, to attempt to restore him to competency through forced medication, then he is going to walk away, and there's no way that we can enforce his requirement that he register as a sex offender. Now, Mr. Stepp says, well, he's on probation in Virginia, which is certainly true. Well, we see how far that's gotten us. Virginia has not been effectively monitoring or able to control his whereabouts, where he goes, or what he does, because he ended up in our state. And so even if he's picked up on the probation violation and brought back to Virginia, or even if he goes out and he doesn't register as a sex offender and we try to arrest him again, then we're going to be back in the same exact position. The state of Virginia will have no opportunity to enforce his registration requirements. We as the federal government will have no opportunity to enforce his. You could have sent him back to Virginia the day after he was picked up in South Carolina. I don't understand this argument at all. There was an arrest warrant for Mr. Sanderson issued in Virginia, which was a detainer against him, when he was picked up in South Carolina, correct? Sure. There was no federal involvement in this case whatsoever in the first 48 hours after he was arrested in South Carolina. Isn't that correct? I don't dispute that. He was arrested by a local officer, a state or local officer in South Carolina, on a Virginia state warrant. There was a Virginia warrant, yes sir. The federal government had nothing to do with this. He could have been extradited back to Virginia in due course at any time. I guess I don't understand your question. It wasn't a question. Fair enough. It's just a little history. Sure. This SORNA offense didn't even exist 10 years ago, right? No, sir. It exists now. The reason it exists is that Congress obviously thinks it's important for the community to be aware of where convicted sex offenders are. It's a community safety thing. Maybe I was not clear to you, and I realized it wasn't a question. You were providing history. My point is not what Virginia will or will not do. My point is Mr. Sanderson is in a unique position. If we can't forcibly medicate him and restore his competency to go to trial, the SORNA requirement has no teeth. He can keep going back out and failing to register, going wherever he wants, without any way to control that movement. Each time he comes back in here, if he's mentally incompetent, we're going to be going through these same procedures. That would be the case if we shipped him back to Virginia. That's the point I was trying to make, and maybe I didn't make it clearly, is that regardless of who takes control of him, if this court reverses and he's released, there's no enforcement mechanism, whether it be the Virginia probation or whether it be the federal government trying to get him to comply with his SORNA requirement, because the doctors were clear. They do not think he's going to be restored to competency on his own, and they tried. It went before Magistrate Judge McDonald. He sent him off to be evaluated, came back. He's incompetent. All right, well, let's send him back to Butner and see if we can get him to take the medicine and see if his competency can be restored that way without involuntary medication. They had his mom talk to him. They had his sister talk to him. He said, I don't give a crap what they think. And he's been there for two years, and he's still not taking the medicine. And the doctors say he's not going to take the medicine on his own. The only way that he can be restored to competency is through involuntary medication. So what's the answer to my earlier question? If you know, I realize you haven't briefed it, Mr. Johnson, but how long can the government hold somebody in pretrial detention hoping, wishing for competency? Like Mr. Stitt, I don't know. The short answer is I don't know. You agree that the outside has got to be ten years? Correct. Okay. Correct. And as a practical— And you agree that as a theoretical matter, at least, there's some due process constraint, right? Yes, I do. We don't know what that might be, but there is some point. Presumably there's some point when due process says, no, you can't continue to hold this person. I agree with that. Okay. And frankly, I would be very surprised if the government can hold him under due process to the maximum extent of what his sentence would be if he's convicted of the offense. Right. I don't know the answer to that question. Certainly there has to be a reasonableness component. And that's part of our concern is that if this court were to reverse the district court's order, the doctors have already said we've tried everything we can short of involuntary medication. We're not going to be able to restore his competency. What if a court were to say, no, you can't medicate, and then the therapeutic modality becomes to include—at some point he's been in, what, I don't know, three years, four years, five years. Presumably some therapist will say to him, now, you know, Mr. Pre-Trial Detainee, you're in here because you won't take the medications. And, you know, you've probably been in here longer now than you would have been in here had you gone in and pled guilty two or three years ago. Is that totally fallacious? I mean, I'm no psychologist. None of us are psychologists, but does that—I mean, does that make sense? Might a schizophrenic such as Mr. Sanderson have enough lucidity to hear that kind of therapeutic approach and say, well, you know, doggone it, he's right. If I just take these medications, cooperate with my lawyer, I'll get out of this dump. I wouldn't say that it's outside the realm. With all respect to Butler, I've been there.  It's not a dump. I can't say that it's outside the realm of possibility. And I think a psychiatrist or a psychologist would try it. Because either way, he's going to be at Butler, right? I mean, it's pretty clear, I think, that for this defendant, if he's forcibly medicated or voluntarily medicated, restores competency, goes in, either goes to trial, and it's going to be like a two-hour trial. Exactly. He either goes to trial or he pleads guilty. He gets sentenced. Given his medical history, he's going right back to Butler. I think that's very likely. It's almost a certainty. Sure. So if he's going to be at Butler for the next couple of years, why should we forcibly medicate him to get him there? He's already there. He's not going to go anywhere for the next couple of years unless the government chooses to dismiss the prosecution, which is entirely up to prosecutorial discretion. Just like the government chose to prosecute him instead of sending him back to Virginia, the government can choose, within the constraints of due process, how long to keep him at Butler, unmedicated. I see what you're saying. But the problem with that is if you reverse, then Mr. Steps is going to argue, Your Honor, we can't, or I assume he will. I would. He can't be forcibly medicated. The doctor, he's been in there two years, hasn't been taking the medicine. The doctors have tried everything else that they can to restore his competency. At this point, Your Honor, after two years or whatever time it will be once he gets sent back to the district court, Your Honor, on due process grounds, you have to release him. I'm not going to comment on the strength of what that argument would be, but it's certainly a fair argument. I don't think that we can hold him indefinitely, and I don't think that we can hold him up to ten years just hoping that one day he'll come to his senses. Why are you so sure you can't hold him for six years? Or five? I mean, we're still outside the record. Again, I realize counsel haven't briefed this issue. I'm not sure, frankly, it's come up much in the context of a cell analysis. But I don't know why it hasn't come up. I'm certainly not the first person to think of it. And I don't know either. You asked me how am I sure that it wouldn't be. I'm not sure, and I don't know. And I think that's part of the problem. We need to go ahead and prosecute him now. We can end the uncertainty. And because whether it's two years or four years or whatever, there's no indication that he's going to be brought to competency in any other method. And the government has an interest in prosecuting this man, a convicted sex offender who's now on his third failure to register, and to bring as much of the law down on him as we can because it's obvious that the things that have come down upon him up until this point are not working. And I think a couple of things, we've talked about some things that distinguish this case from White. Another, I think, that is fair to point out is that in White, the prognosis was much more uncertain for Ms. White, who had delusional disorder of a grandiose type, and literature was vague at best about what the chances were of restoring her to competency were she forcibly medicated. Is that a special circumstance that goes to the first factor, or is it simply something that's independent? I mean, that seems to be accounted for in the other cell factors, the likelihood of success with respect to the therapeutic protocol. I think it relates to more than one factor. And I think it relates to the first factor because I think this court discussed in White the fact that that prognosis was not as hopeful for her, whereas for him it is. And so that does weigh as to the second through fourth cell factors, but I think it shows that these are not special circumstances that mitigate against the government's interests. It's a circumstance that mitigates in favor of the government's interests, as well as showing that this is medically appropriate for Mr. Sanderson, that it's likely to restore him to competency, it's not likely to hinder his ability to communicate with his lawyer, and that it's necessary in this instance. Am I correct that the order in this case contemplates forcible medication through sentencing? I'd have to double-check it, but I would not be surprised if it did. And so once he's sentenced and sent back to Butner or Springfield, there's no legal mechanism for the United States forcibly to medicate him so long as he's not a danger to himself, correct? Correct. I think that would be the paradigm, because the question would no longer be his competency to go through the proceedings. Right, so the schizophrenia kicks in again three, four weeks after he arrives back at Butner from the sentencing hearing. And he's in the exact same state he's in today if he refuses voluntarily to take his meds. If he comes back to Butner, refuses to take his meds, schizophrenia kicks back in, I think the analysis would be whether he's a danger to himself or other people by virtue of the schizophrenia. Right, and we know there's no dispute, although Judge Diaz certainly is correct to point out that there's sort of an inherent danger in a convicted sex offender, but we're talking about an imminent danger to oneself or others in the contemplation of civil commitment. I agree. Okay, so I mean if the government prevails here, pretty much we're going to be in the exact same status quo that we're in today a few weeks from now, subject to appeals and petitions for cert and all of that, if he refuses to take his meds. Because the conviction is a certainty, right? You agree with me, this is going to be a one-hour trial. That's probably longer than it's actually going to take. Sure. Because they just produce a document to show that he's the same person who was convicted in Virginia and the absence of any registration effort on his part. So that's where we are. Probably have the sentencing the same day. Probably waive the PSR. Well, I haven't looked at this statute in a while, but wasn't there also an attempt, at least some indication, that they would have to assess whether or not he was competent at the time of the commission of the offense? That was in the judge's order. Right, and that's not a slam dunk. In fact, it may be likely that he was not. And I assume there's a mens rea component to the offense. So to say it's a slam dunk, I'm not sure. I mean, it may be, but maybe not. And I think that's a fair point. What is the mens rea element for failing to register? My understanding is that it's a knowing mens rea. What would you have to show? Have you prosecuted one of these before? I personally have not. You have not. So when we say knowingly, what does it mean? I think you'd have to show that he knew that he had an offense for which he was required to register. And, in fact, he's been convicted of failing to register a couple of times. He has. Certainly the trial would not be long. I think the only length to it would be if you had an expert who was brought in to opine on his schizophrenia and whether that interfered with if he was so sick that he didn't know Has Mr. Stepp filed a notice of insanity? I don't think we've gotten that far. You haven't gotten that far? It was discussed at the hearing before Judge Anderson. There were some questions asked of the doctor. Well, but I assume he's been arraigned. Yes. And he pled not guilty, or a not guilty plea was entered on his behalf. Correct. And ordinarily there'd be a scheduling order of some sort that required pretrial motions within a couple weeks of the arraignment, right? That's why I asked the question. Correct. He's been arraigned, and I think all of that was put on hold pending the results of his competency. And then Judge Anderson put in the order. The doctor said that he would not be able to really produce an opinion on insanity at the time of the offense because he's so incompetent he cannot engage with the doctors. And that's the reason why that hasn't been addressed up until this point. And I make that point not to necessarily disagree with my colleague. It may well be a slam dunk, but there are some hoops that would have to be jumped over before we get to that point. And I agree with that. I just think that the fact that there are so many intricacies to this case and what will happen here, what will happen there, this is not a routine case. It's not even a routine sex offender case given the history of Mr. Sanderson. And that this is . . . You mentioned the history. I mean, obviously a sex offense is a serious offense, but the evidence on dangerousness was not the most compelling, I don't think. I mean, there was some indication that at best a moderate risk of recidivism and some conflicting evidence on future dangerousness. You would agree it's not the most compelling evidence. Judge, I see my time has expired, but I'll briefly respond. Oh, absolutely. I think it was either in 2006 or 2007, when he was released from one of his prison stints, there was an evaluation and he was found to be, as compared to other sex offenders, at low to moderate risk to reoffend. However, it also noted that that was dependent on his mental state, whether he's on medication and that sort of thing as well. Now Mr. Jett has pointed out that he was convicted of the underlying sex offense in 1998 and was arrested on this offense in January of 2011. So you're talking about a period of about 13 years. Mr. Jett pointed out we don't know of any other substantive offenses that he has committed. I think it's fair to point out that of those 13 years, he's been in prison for seven years because he was in prison for five years on the underlying sex offense. He's done a two-year prison term for one of his failure to register offenses. So for more than half that time he's been in jail, and then in the six years that he has been out, he's now on his third prosecution for failing to register. So we think there are serious concerns, especially the circumstances in which he was arrested and the fact that he continues to report having sexual proclivity for underage children, shows that he is a danger to society. Unless the court has any other questions, we would ask you to affirm district court's order. Thank you, Mr. Jett. Thank you. Thank you. If I could briefly respond, maybe getting a little far afield, taking it one step further. If Mr. Sanderson, if the court upholds the district court and they medicate him and he gets restored to competency, then before he comes back to South Carolina and has a competency hearing, I believe that they will render their opinion about whether he was criminally responsible at the time of the offense on the insanity issue. So we will have to deal with that. And the case would then turn on whether he knowingly failed to register, whether he had some mental illness at the time that he came from Virginia to South Carolina that interfered with his ability to make decisions and whether he should be held legally accountable or not. But let's assume that if he is convicted of the charge, well, let me back up. If they find him to be insane, then, of course, we're going to be in a situation to where the only question is, is he a danger to himself or to others? We'll have a risk assessment hearing, and the court will have to decide, well, we either hold him or we put him out on conditional release, kind of like probation without not being on probation. But nevertheless, we're in a similar type of situation. They may want him to take medication. They may think it's best for him, but he may still say, you know what? We've been through this little trial. I'm done with it. You can't continue to forcibly medicate me. I'm not taking this stuff. And what they do with him, who knows? Mr. Johnson said that he'd been in for seven years since 1998, five on the original Virginia conviction, and then two on one of the failure to registers. If that's correct, I'm curious to know what he got on the other failure to register. Do you know? One of them may have been in conjunction with a probation violation. Okay, that's all right. I'm really not sure, and I'm not even sure when they say somebody gets two years in jail how much they might actually do because it differs from state to state and it's hard to keep up with. But the situation is we want to punish people who don't register as sex offenders, and we want them to register. Well, we don't know whether people are going to register because Sanderson or anyone else like him, there's all these class of people that just don't do what they're supposed to do. They get locked up, and for not doing, they get out again, and they may do it. They may comply. They may not comply. He complied during some periods of time while he was in Virginia under supervision, and I don't know what the nature of the failures to comply were, whether he moved from one county to another and didn't register, or whether he just flat out quit registering altogether. I don't know how the law is on that. But I would say that, you know, oftentimes if I have a client, I have a client at Butner other than Mr. Sanderson who's in a similar situation, except he's on supervised release, and they say he needs to be taking medication in order to be rendered competent. And we were staring down the same situation. He didn't want to stay at Butner. I said, well, you know, if you don't want to stay at Butner, you might just take the medication that Dr. Herbal recommends, and we can deal with this thing pretty quick. Did it work? It did. He's coming back in a couple of weeks. Sanderson is a different animal. And, you know, maybe if he had a different lawyer, one who could get him to go out of the country, he might have some more confidence in somebody and do things differently. But it's an exceptional remedy to forcibly medicate this man. And if the court doesn't and the government decides, well, they've either got to turn him loose or hang on to him, I don't know, maybe they certainly could say, well, if we're going to turn loose of him, and we're going to decide whether we're going to prosecute him later, we'll consider putting him out on a bond. And the only way we're going to let him out, number one, he's got to register as a sex offender, number two, he needs to take medication that's recommended by pretrial services or whoever. And that would be one way to get him out of a penal situation, which is what it is. I mean, he's locked up in pretrial detention. And he could comply with the law. And this continuing offense is only continuing as long as you're not under registration. And he's not in violation of the law now because he can't register. I mean, he's at the place where all the sex offenders end up, which is Butner. I see what you're getting at. It's a continuing offense in the sense that limitations, I guess, doesn't accrue until the government has reason to think that you've entered a state without registering. But it's a completed offense in the sense that he was found in South Carolina unregistered, and therefore he can be prosecuted. I mean, it's a completed offense even though it's a continuing offense. Correct. He allegedly committed the offense when he left Virginia. He didn't commit the offense in South Carolina. He hasn't committed the offense today is what you're getting at. He can. Right. He didn't commit the offense yesterday. He quit committing the offense January 9th when he got locked up. Okay. Thank you. Thank you very much.
judges: Andre M. Davis, Albert Diaz, Stephanie D. Thacker